IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISON

| | | |
|---|---|---|
| VIRGINIA BELL | : | Civil Action No. _____ |
| Plaintiff, | : | |
| vs. | : | |
| VERACITY FINANICAL GROUP, LLC, and JOSH DAVIS, | : | |
| Defendants. | : | |

COMPLAINT

Plaintiff Virginia Bell, by her attorney Ray Johnson, for her claims against the Defendants states:

I. INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

II. JURSIDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1337, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367. Venue in this District is proper in that Defendants transact business here and the conduct complained of occurred here.

## III. PARTIES

3. Plaintiff, Virginia Bell is a natural person residing in Pleasant Hill, Iowa.

4. Defendant Veracity Financial Group, LLC (hereinafter "Veracity") is a business engaged in the collection of debts in the state of Iowa with its principal place of business located in Des Moines, Iowa. Defendant Josh Davis is a debt collector employed at Veracity.

5. Defendants, at all times relevant to this Complaint, were "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## IV. FACTUAL ALLEGATIONS

6. The Plaintiff had a debt from Dr. Stephen Quinlan, which Veracity was attempting to collect.

7. In January of 2008, Bell's 7 year old son Scotty became sick, requiring extensive medical treatment. The Bell's took Scotty to a number of doctors, including their family pediatrician, medical doctors in Iowa City that specialized in Tourettes Syndrome and tic disorders in children, neurologists and a urologist. Scotty also underwent numerous tests including an EEG, CT Scan and other tests, which spanned about four months. In April, Scotty lost complete control of his bladder. Scotty was taken to his pediatrician who eventually referred him to Dr. Stephen Quinlan, a Urologist. Dr. Quinlan ran a number of tests and treated Scotty.

8. Scotty's primary insurance was through Scott Bell's insurance with the Plumbers & Steamfitters. Sometime after March of 2008, Bell received a bill from Dr. Quinlan's office for $262.50. She later saw that Plumbers & Steamfitters had made a payment to Dr. Quinlan for $265.00, which Virginia thought was the payment of the $262.50 bill. Bell thought the bill had been paid, but instead the $262.50 bill was apparently for her portion of the deductable.

9. On or about November 11, 2008, Bell received a collection notice from Veracity for the $262.50 bill. John Allen from Veracity phoned Bell on November 13th. Allen was told Bell had received the notice but thought the bill had been paid. She would follow up on it and get back to him. After going over her billing statements again and talking with Plumbers & Steamfitters, Bell realized what had happened and that she may have been billed the $262.50 as a deductible.

10. Bell also knew because Dr. Quinlan had turned the receivable over to Veracity he would only receive a portion of any money collected on the bill. Bell, believing Dr. Quinlan is an excellent doctor, and being very thankful for his services, phoned Dr. Quinlan's office on November 20th and visited with his office manager. Bell told the office manager she had made a mistake and knew Dr. Quinlan would have to a pay a certain percent of any money recovered, and if she could let Bell know what percent he had to pay, Bell would send Dr. Quinlan a check for that amount. The office manager said that was not necessary and to just make payment to Veracity. Bell then initiated a call to Veracity on November 20, 2008, to make payment.

11. During the November 20, 2008 phone call, Bell provided John Allen at Veracity with her debit card information and paid the alleged debt in full. At that time, Veracity also demanded personal and confidential information such as additional bank account information, mother's maiden name and her and her husband's work contact information.

12. Bell had already provided her debit card information for full payment of the alleged debt, and found it both unnecessary and ill advised to provide Veracity or its employees with additional confidential information they had no legitimate need or use for. Bell was transferred to a supervisor, Defendant Josh Davis, who confirmed the information for payment, and then he

also demanded the irrelevant confidential information. Bell once again refused. Defendant Davis was not satisfied with this response, became increasingly belligerent, and threatened to pull Bell's credit report that night, find out where she worked, and then call her place of employment the following day if she did not provide the additional information. Defendants at that point had no legal justification or legitimate reason to pull Bell's credit report or to call her place of employment, although he threatened to do so several times.

13. Bell informed Defendant Davis it was illegal for Veracity to pull her credit report after she had already provided information to pay the alleged debt in full. Defendant Davis told Bell he could do whatever he wanted, it was legal and he was going to pull her credit report yet that night.

14. Bell then revoked her authorization to charge her account. Defendant Davis's response was "too bad, it's already been charged" and then laughed at Bell. He then said "let me see here, your card number is ....(reading it to Bell), you bank at Horizon Federal ... I think I have everything I need. Is there anything else I can do for you today". He then hung up. Bell took the reading of the account number, naming of the bank and the comment the supervisor had everything he needed as a threat to make further unauthorized charges on the account— especially in light of the prior attempts to obtain confidential information from her.

## V. FIRST CLAIM FOR RELIEF

15. All facts and allegations of this Complaint are incorporated herein by reference.

16. Defendants violated the FDCPA. Defendants' violations include, but are not limited to, the following:

    a. Defendants violated 15 U.S.C. § 1692d(2) by using language that the natural consequence of which is to abuse the hearer.

    b. Defendants violated 15 U.S.C. § 1692e(5) by threatening to take an action that could not be legally be taken.

    c. Defendants violated 15 U.S.C. § 1692e(10) by using deceptive means to collect or attempt to collect an alleged debt or to obtain information concerning a consumer.

17. As a result of the violations of the FDCPA, Defendants are liable to Plaintiff for her statutory damages, actual damages, including damages for aggravation, inconvenience and emotional distress, and costs and attorney's fees.

## VI. SECOND CLAIM OF RELIEF

18. All facts and allegations of this Complaint are incorporated herein by reference.

19. Bell's alleged obligations were "debts" as defined by Iowa Code § 537.7102(3).

20. With regard to attempts to collect from Bell as alleged herein, Defendants were "debt collectors" engaged in "debt collection" as defined by Iowa Code §§ 537.7102(4) and (5).

21. Defendants violated the State Act. The foregoing acts, omissions and practices of the Defendants were violations of Iowa Code § 537.7103, including but not limited to:

    a. Defendants violated Iowa Code § 537.7103(1)(f) by taking an action, or threatening to take an action prohibited by Iowa Code chapter 537.7103 or any other law.

    b. Defendants violated Iowa Code § 537.7103(2)(a) by using language that the natural consequence of which is to abuse the hearer.

    c. Defendants violated Iowa Code § 537.7103(3)(a) by threatening to communicate or imply the fact of a debt to a person other than the debtor or a person who might reasonably be expected to be liable for the debt.

22. As a proximate result of the unfair debt collection, Bell has suffered actual damages and injury for which he should be compensated in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully requests the Court award her actual and statutory damages, and that the Court award Plaintiff's attorneys their reasonable expenses and attorney's fees, and that the Court assess all costs against the Defendants and for any and all further relief the Court deems just.

Respectfully submitted,

*/s/ Ray Johnson*
RAY JOHNSON
AT0004019
Johnson Law Firm
950 Office Park Road
Suite 335
West Des Moines, Iowa 0265
Phone: (515) 224-7090
Fax: (515) 222-2656
Johnsonlaw29@aol.com